# In the United States Court of Federal Claims

No. 25-1984T
Filed: August 25, 2026
NOT FOR PUBLICATION

**BMW (US) HOLDING CORPORATION AND SUBSIDIARIES,**

***Plaintiff,***

**v.**

**UNITED STATES,**

***Defendant.***

## MEMORANDUM OPINION AND ORDER

***HERTLING*, Judge**

The plaintiff, BMW (US) Holding Corporation and Subsidiaries ("BMW US"), sued the defendant, acting through the Internal Revenue Service ("IRS"), for a refund of taxes. BMW US filed its 2019 IRS Form 1120 tax return ("2019 tax return") on September 15, 2020. On October 14, 2020, BMW US filed a superseding IRS Form 1120 tax return ("superseding 2019 tax return"). On October 13, 2023, BMW US filed an IRS Form 1120-X ("2019 refund claim") seeking a refund of $38,436,000. The IRS disallowed the 2019 refund claim, finding that it was filed too late under the three-year statute of limitations prescribed in 26 U.S.C. § 6511. BMW US then filed this action seeking the $38,436,000 from its 2019 refund claim. On December 1, 2025, the plaintiff filed a redacted version (ECF 6-1) of its 2019 refund claim as an exhibit to its complaint. (ECF 1.)

The defendant moved to dismiss under 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") on February 11, 2026. The defendant included the first several pages of both the 2019 tax return and the superseding 2019 tax return as exhibits 1 and 2 to its motion. Exhibit 1 is the first two pages of the 2019 tax return, containing information about gross receipts, returns, cost of goods, gross profit, compensation of officers, salaries and wages, repairs and maintenance, and other aggregate income and deduction figures. Exhibit 2 is the first three pages of the superseding 2019 tax return, containing the same information as exhibit 1.

On February 12, 2026, the plaintiff requested that the defendant's exhibits be filed under seal. In response, the defendant filed an unopposed motion, which was granted, to replace the exhibits. On February 13, 2026, the defendant refiled its motion with exhibits 1 and 2 redacted to remove the plaintiff's taxpayer identification number ("TIN"). (ECF 13-1; ECF 13-2.)

On February 24, 2026, the plaintiff filed a motion to seal its 2019 tax return and 2019 superseding tax return, arguing that the two exhibits still "expose [ ] sensitive and highly confidential tax and financial information." (ECF 16 at 3.) To allow for the orderly resolution of the dispute, the exhibits to the complaint (ECF 6-1) and the motion to dismiss (ECF 13-1; ECF 13-2) were sealed until the motion to seal was resolved. (ECF 18.)

On May 26, 2026, the defendant filed a motion to unseal the redacted version of the plaintiff's refund claim, the 2019 tax return, and the 2019 superseding tax return. The defendant argues that the sealing of these documents "does not comport with well-established principles presuming judicial proceedings and documents open to public scrutiny." (ECF 27 at 4.) On June 9, 2026, the plaintiff filed its response to the defendant's motion to unseal. On June 16, 2026, the defendant filed its reply to the motion to unseal. On July 17, 2026, the plaintiff filed, with leave of the court, a sur-reply.

Oral argument on the motion to dismiss was held on July 22, 2026. At oral argument, the parties were directed to try to resolve the issues of confidentiality informally. On August 18, 2026, the parties filed a joint status report (ECF 40) in which they agreed that the entirety of the 2019 refund claim except for the first two pages should remain redacted. The parties continue to disagree over the extent to which the two returns should be redacted. The plaintiff contends lines D, 2, 3, 5, 6, 9, 15, 22, 23, and 24 of both 2019 returns should be redacted. The defendant counters that the returns must be unsealed in their entirety, aside from redactions contemplated by RCFC 5.2 and 9(m).

The parties also continue to disagree over the extent to which personally identifying information on the 2019 refund claim, 2019 tax return, and 2019 superseding tax return should be redacted under RCFC 5.2 and 9(m). The plaintiff contends that its TIN and the TIN of its tax-return preparation firm ("PTIN") should be redacted. The defendant counters that only the plaintiff's TIN and not the PTIN should be redacted.

BMW US fails to show that any concrete harm would occur were the information it seeks to redact from both its 2019 tax returns unsealed. BMW US also cannot show that this information is otherwise irrelevant to the resolution of its claim. Accordingly, BMW US is unable to overcome the presumption that information used in litigation is public. Continued redaction of both the TIN and PTIN on all documents, however, is appropriate under RCFC 5.2 and 9(m), because they are not relevant to the resolution of this case.

There is "a strong presumption in favor of . . . public access to court proceedings." *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1356 (Fed. Cir. 2011). This presumption is based on the "general right to inspect and copy public records and documents, including judicial records and documents," a right "not condition[ed] . . . on a proprietary interest in the document or upon a need for it as evidence in a lawsuit." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Complaints and motions in civil litigation are among the judicial documents subject to the common-law-derived presumption of public access. *See, e.g.*, *AmerGen Energy Co., LLC by & through Exelon Generation Co., LLC v. United States*, 115 Fed. Cl. 132, 136-37 (2014); *Black v. United States*, 24 Cl. Ct. 461, 464 (1991). The First Amendment, moreover, independently protects public and media access to judicial proceedings and the documents framing those

proceedings, including exhibits in support of a dispositive motion. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 122-4 (2d Cir. 2006).

Tax cases are subject to the same rebuttable presumption of public access applicable to other civil proceedings. *AmerGen Energy Co.*, 115 Fed. Cl. at 142. A "party seeking to prevent disclosure . . . must demonstrate compelling reasons for keeping such information out of public view." *Id*. at 137. A "conclusory self-serving statement that [a taxpayer's] business and its competitive position would suffer if information . . . became public" is insufficient. *Forest Prods. Nw., Inc.*, 62 Fed. Cl. at 114; *see also Wall Indus., Inc. v. United States*, 5 Cl. Ct. 485, 487 (1984) ("it is axiomatic that nebulous and conclusory allegations of confidentiality and business harm are insufficient" to overcome the presumption of public access).

The presumption of public access to judicial records is not absolute. *In re Violation of Rule 28(d)*, 635 F.3d at 1356. "Every court has supervisory power over its own records and files, and access [may be] denied where court files might . . . become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598. Thus, "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id*. at 599. In exercising that discretion, a court "weigh[s] the interests advanced by the parties in light of the public interest and the duty of the courts." *Id*. at 602.

The plaintiff argues that the presumption in favor of public access to court proceedings can be overcome by a compelling showing that material should not be disclosed. (ECF 16 at 7.) BMW US contends that the information it seeks to withhold from both its 2019 tax returns reveals in three distinct ways trade secrets and other sensitive business information, and that the disclosure of this information could cause it competitive harm. BMW US supports its argument with two declarations by Joseph Creighton, its chief tax officer.

First, BMW US contends that the various line items from its 2019 tax returns "could potentially" be "reverse-engineered" to reveal its cost- and profit-per-vehicle figures for 2019.[1] (ECF 16 at 9; ECF 16-3 at ¶ 7; ECF 35-1 at ¶¶ 8-9.) Mr. Creighton explains that the cost- and profit-per-vehicle figures can also be reverse-engineered by competitors to tailor their product offerings and pricing. Mr. Creighton also notes that vendors and suppliers could use the information to gain leverage in negotiations. (ECF 16-3 at ¶ 8; ECF 35-1 at ¶ 11.)

Second, the plaintiff argues that its 2019 tax returns contain information that would reveal highly confidential business information, such as compensation and salary packages and the types of benefit programs provided to employees. (ECF 16 at 11; ECF 16-3 at ¶ 9; ECF 35-1 at ¶ 12.) Mr. Creighton explains that competitors can compare these numbers to their own and deduce their comparable spending on these items, from which BMW's competitors could gain insight into BMW's strategy. (ECF 16 at 11-12; ECF 16-3 at ¶ 9; ECF 35-1 at ¶ 12.)

---

[1] The information in these line items includes the cost of goods sold, gross profit, net gain or loss, total income, taxable income before net operating loss, taxable income, interest expenses, and gross rents.

Third, the plaintiff argues that the information on interest expenses and gross rents would reveal the sums generated by its financing products; this information is confidential in the automative industry "because it sheds light on the leasing and loan products offered to consumers and dealers." (ECF 16 at 12; ECF 16-3 at ¶ 10; ECF 35-1 at ¶¶ 14-16.) The information could also give competitors insight into BMW's financial health, the strengths of its loan portfolio, and its marketing strategies. (ECF 16-3 at ¶ 10; ECF 35-1 at ¶¶ 14-16.)

BMW US argues there is no need for it to risk these harms because most of the information it seeks to protect from its tax returns is not relevant to resolving the case. (ECF 16 at 13-14.) The plaintiff argues that the defendant's motion to dismiss requires only a decision on whether the statute of limitations ran before the date BMW US filed its refund claim, and the information on its 2019 tax returns is not relevant to that determination.

The defendant argues that the specific information BMW US seeks to withhold from its 2019 tax returns should be unsealed because it consists only of high-level, aggregated data. (ECF 27 at 7.) This information does not threaten the sort of competitive harm that overcomes the presumption of public access to judicial proceedings. The defendant argues that the plaintiff's claim that, if disclosed, the information could be used by a competitor to calculate BMW US's confidential business information, strategic choices, and financial health is too attenuated to reveal the kind of "'clearly defined and serious injury'" necessary to justify secrecy. *Forest Prods. Nw., Inc. v. United States*, 62 Fed. Cl. 109, 114 (2004) (quoting *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)), *aff'd,* 453 F.3d 1355 (Fed. Cir. 2006). The defendant also argues that most of the information is relevant, pointing out that the motion to dismiss hinges on whether "the refund claim involved a tax item that arose after the original return and could only have been reported on the amended return." (ECF 27 at 12.)

The Federal Circuit has concluded that compelling reasons to restrict public access to judicial records exist when the disclosure of those records might harm a litigant's competitive standing by revealing trade secrets or other confidential business information. *In re Violation of Rule 28(d)*, 635 F.3d at 1356; *see also Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1221 (Fed. Cir. 2013). Courts must balance a litigant's legitimate interests, an inquiry that is necessarily "fact-bound." *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir.), *cert. denied sub nom. Hopkinson v. United States,* 474 U.S. 1022 (1985). When disclosure would cause concrete competitive harm while offering little or no insight into the judicial decision-making process, courts will find the presumption of public access rebutted. *Id.*

BMW US's 2019 tax returns include information that could competitively harm a business. Mr. Creighton's supplemental declaration demonstrates that competitors could reverse-engineer BMW's 2019 tax returns to reveal the cost and profit per vehicle for 2019. (ECF 35-1 at ¶ 8-9.) Mr. Creighton's supplemental declaration also explains that the 2019 tax returns reveal how much BMW US spent in 2019 on executive compensation, salaries, wages, and benefits, such as pensions and employee benefits. (*Id.* at ¶ 12.) Mr. Creighton's supplemental declaration reflects that the 2019 tax returns also contain information that competitors can use to determine BMW US's 2019 advertising costs, financial-services strategy, and proceeds from leases and loans. (*Id.* at ¶¶ 14-16.)

The information identified by BMW US could have been exploited by competitors to obtain further information regarding both the financial status of BMW US and its strategic choices in 2019. There is little doubt that the information was once confidential.

BMW US has not, however, met its burden to show that this information, once unquestionably sensitive, remains so today. Courts have found that "information loses its confidential nature once it becomes stale." *E.g.*, *In re Nat'l Prescription Opiate Litigation,* 927 F.3d 919, 926, 937 (6th Cir. 2019); *Avtel Services, Inc. v. United States*, 70 Fed. Cl. 173, 191 (2006); *United States v. Int'l Bus. Machines Corp.,* 67 F.R.D. 40, 49 (S.D.N.Y. 1975); *Rosenblatt v. Northwest Airlines, Inc.,* 54 F.R.D. 21, 23 (S.D.N.Y. 1971).

BMW US's evidence fails to connect the particularized harm identified by Mr. Creighton to the present day beyond merely asserting the connection. The declarations explain why line items from the 2019 tax returns can be reverse-engineered or used to determine 2019 business information that was then sensitive. They do not, however, meet the plaintiff's burden to show that this information can be used to reveal the plaintiff's present-day business strategy or financial health.

Mr. Creighton claims that "information reflected in the 2019 tax returns continues to inform BMW US's present-day operational, financial, and strategic decision-making," as well as "longer-term planning and investment." (ECF 35-1 at ¶ 26.) He also claims the information from the 2019 tax returns "remain[s] probative of present-day operations because they reflect baseline cost structures and pricing strategies that continue to inform BMW US's current financial performance and competitive positioning," and that these cost structures and pricing strategies "do not materially change year-over-year." (*Id.* at ¶¶ 9, 26.)

While BMW US may still consult the 2019 figures in connection with strategic decision-making and long-term planning, their continued internal use does not preserve their confidential character indefinitely. Similarly, figures reflecting baseline cost structures and pricing strategies do not preserve their confidential character because the figures do not vary substantially from year to year. General stability does not make the specific 2019 figures current or competitively sensitive. Rather, the figures provide, at most, a historical reference point from which the company and its competitors may evaluate trends and formulate later decisions; they do not disclose the company's present cost- and profit-per-vehicle figures, current expenditures on employee compensation and benefits, or marketing and financing strategies.

The 2019 figures are now more than six years old. The plaintiff fails to explain how and why such stale information, like the potential ability to reserve-engineer 2019 cost- and profit-per-vehicle data or to deduce input costs, could affect the plaintiff in 2026, whether in negotiations with suppliers or by enabling competitors to obtain a competitive advantage. To accept the plaintiff's assertions on the need for the continued confidentiality of data that are more than six years old would undermine the presumption that litigation involving any corporate tax claim be conducted publicly. The plaintiff's argument cannot bear this weight, because old business data is likely to retain some utility over time for comparative purposes in all competitive environments. The law does not support the plaintiff's effort to flip the presumption that litigation be conducted in public, unless there are compelling reasons for secrecy.

Finally, the information is relevant to the merits of this case. A portion of the jurisdictional question turns on whether the statute of limitations began to run after the 2019 tax return was filed or the 2019 superseding tax return was filed. The defendant argued in part that the plaintiff could only show timeliness if the statute of limitations restarted when the 2019 superseding tax return was filed. That argument hinged on whether the 2019 superseding tax return involved a claim that could only have been reported in that return. A determination of whether the 2019 refund claim involved any claim that only could have arisen on the 2019 superseding tax return was thus necessary to resolve one part of the motion to dismiss. A comparison of the high-level, aggregated information from the 2019 returns and the refund claim was required to resolve this issue.

The parties also disagree with the extent to which personally identifying information on the plaintiff's 2019 refund claim and 2019 tax returns should be redacted under RCFC 5.2 and 9(m). The plaintiff contends that both its own TIN and the PTIN should be redacted. The defendant counters that only the plaintiff's TIN, not the PTIN, should be redacted.

RCFC 9(m)(1) protects "the identification number of *any* taxpayer." (Emphasis added.) Although RCFC 9(m) is typically applied only to the taxpayer filing the refund claim, its language is not restricted to the plaintiff filing a case. The Internal Revenue Code, 26 U.S.C. § 6109(a)(4), requires a return preparer to furnish an identifying number on a return or claim for refund, and the IRS by regulation 26 C.F.R. § 1.6109-2(a) defines the identifying number furnished by a preparer as a PTIN. RCFC 9(m) on its face applies to the TIN of "any taxpayer," which appears to include the TIN of any preparer.

Not only does RCFC 9(m) apply to PTINs, but disclosure of that reference is unnecessary to the resolution of the motion to dismiss or the case. *See United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (Documents subject to the right of public access are those that are "relevant to the performance of the judicial function and useful in the judicial process."). Here, the PTIN is not relevant to the jurisdictional question raised by the motion to dismiss, and the disclosure of the PTIN would not assist the public in understanding the resolution of the motion or the case. Without a public interest in its disclosure, the PTIN may be redacted, consistent with the text of RCFC 5.2(a)(1) and 9(m).

For the foregoing reasons, the plaintiff's motion to seal exhibits 1 and 2 to the motion to dismiss (ECF 16) is **DENIED**. The defendant's motion to unseal (ECF 27) is **GRANTED**, except for the information the parties have agreed may be redacted and any information covered by RCFC 5.2 and 9(m), including the PTIN. The plaintiff shall file by **September 4, 2026**, the exhibits to its complaint in a form that complies with this order. The defendant shall file by that same date the exhibits to its motion to dismiss in a form that complies with this order.

It is so **ORDERED.**

s/ Richard A. Hertling

**Richard A. Hertling**
**Judge**